```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

**ABDALLAH YOUSEF**                                         **CIVIL ACTION**

**VERSUS**                                                  **NO. 21-160**

**JAMES RIVER INSURANCE COMPANY**                           **SECTION "B"(3)**

## ORDER AND REASONS

Before the Court are plaintiff Abdallah Yousef's motion to remand (Rec. Doc. 7) and defendant James River Insurance Company's opposition (Rec. Doc. 12). For the reasons below,

**IT IS ORDERED** that the motion (Rec. Doc. 7) is **GRANTED**.

## FACTS OF THE CASE AND PROCEDURAL HISTORY

In May 2015, plaintiff Abdallah Yousef ("Yousef") came to the United States to seek asylum upon learning that the Jordanian government stripped him and his family of their citizenship and banned them from returning to Jordan or regaining citizenship. Rec. Doc. 7-1 at 3. Yousef initially settled in Metairie, Louisiana, to facilitate his asylum case in Louisiana Immigration Court. *Id.* at 4. While seeking asylum, Yousef, a former Qatar-based journalist, started working as a rideshare driver for Uber, but his goal was to reestablish himself as a journalist near Washington D.C. Rec. Doc. 7-2 at 17-18.

On February 12, 2018, Yousef was driving for Uber and was en route to pick up a passenger in New Orleans, Louisiana. Rec. Doc. 7-1 at 4. While Yousef stopped at a stop sign, another vehicle

1

drove through the stop sign on the opposite side of the intersection and collided with a third vehicle, causing the third vehicle to spin and collide into Yousef's vehicle. *Id.* at 2-3. As a result of the incident, Yousef alleges to suffer and continues to suffer with neck, chest, and left shoulder pain among other bodily injuries. Rec. Doc. 1-2 at 2.

On January 28, 2020, Yousef filed suit against James River Insurance Company ("James River") in Civil District Court for Orleans Parish ("CDC") as the incident occurred in Orleans Parish. Rec. Doc. 7-1 at 3. At the time he filed suit in Louisiana state court, Yousef had already moved to Virginia because his next scheduled asylum hearing would be in 2021 and he wanted to pursue a career in journalism.[1] *Id.* at 4. Thus, at the time of filing, the parties were both citizens of Virginia, and complete diversity did not then exist to invoke federal jurisdiction. Rec. Doc. 1 at 2.

However, upon later discovery that Yousef may no longer reside in Virginia, James River removed the instant matter to this Court pursuant to 28 U.S.C. § 1332. *Id.* Based on informal discussions with plaintiff's counsel and subsequent discovery responses, Yousef revealed that the economic fallout resulting from the pandemic caused him and his family to move from Virginia to New

---

[1] Although Yousef's immigration matter was originally filed in the Louisiana Immigration Court, his case was subsequently transferred to Virginia Immigration Court. *See* Rec. Doc. 7-1 at 8; Rec. Doc. 7-2 at 16-17.

York. *Id.* at 3. Although Yousef expresses an intent to return to Virginia once he secures employment, James River argues that Yousef is now a New York resident because he does not have any immediate nor concrete plans to return to Virginia. *Id.* at 4. James River alternatively asserts that Yousef remains a domiciliary of Louisiana. *Id.* at 5. According to James River, under either scenario, complete diversity exists to warrant subject matter jurisdiction. *Id.*

On February 24, 2021, Yousef moved to remand the matter back to the CDC. Rec. Doc. 7. Yousef contends that this Court lacks subject matter jurisdiction because he is neither a citizen nor a subject of any foreign nation, which would effectively destroy complete diversity. Rec. Doc. 7-1 at 5. Yousef further argues that even if he is not considered "stateless," this dispute should still be remanded because he was a Virginia domiciliary at the time the lawsuit commenced. *Id.* at 10. Yousef maintains that his current residency in New York is purely circumstantial and temporary and that he never changed his intent to return to and remain in Virginia indefinitely once he finds a job as a journalist. *Id.* at 11.

On March 23, 2021, James River timely opposed the motion to remand.[2] Rec. Doc. 12. James River argues that Yousef's assertions

---

[2] Because we granted Yousef's motion to continue the submission date, James River's opposition is considered timely. *See* Rec. Doc. 11.

that he is a stateless individual is misplaced. *Id.* at 1. Rather, James River contends that Yousef is either a Louisiana or New York domiciliary because he obtained municipal rights and obligations in those states by virtue of residing there. *Id.* at 1-2. Moreover, because subjective intent alone does not establish domicile, James River alleges that Yousef was never a Virginia domiciliary because he was unable to find gainful employment in his desired field and had to relocate to New York. *Id.* at 6.

**LAW AND ANALYSIS**

If a civil action over which the district court has original jurisdiction is brought in a state court, it "may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The removing party bears the burden of showing that removal was proper, and any ambiguities are to be strictly construed in favor of remand. *See Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 722 (5th Cir. 2002).

Federal district courts have subject matter jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the dispute is between (1) citizens of different states or (2) citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a). For courts to maintain subject matter jurisdiction over removed actions, "diversity of citizenship must

4

exist both at the time of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). "If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties." *Id.* When considering jurisdiction, a court "may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." *Id.*

To establish state citizenship in a diversity action, "a natural person. . .must be both (1) a citizen of the United States and (2) a citizen of a particular state." *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980); *accord Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974); *Scott v. Cricket Communications, LLC*, 865 F.3d 189, 195 (4th Cir. 2017). In the extraordinary case where a party is neither a "citizen of a state" nor a "citizen or subject of a foreign state" within the meaning of the diversity statute, the party is considered "stateless." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828-29 (1989). Federal courts may not exercise so called "alienage jurisdiction" over a stateless party because "the presence of a stateless party operates as a jurisdictional spoiler that destroys complete diversity." *Mitchell v. Bailey*, 982 F.3d 937, 943 (5th Cir. 2020)(internal quotes omitted).

Oftentimes when courts assess stateless parties in the diversity context, the party is a stateless entity or a U.S. citizen who has established a domicile in another country. *See id.* (holding that a federally recognized Native American tribe is a stateless entity when determining whether complete diversity exists); *Newman-Green*, 490 U.S. at 828 (finding that defendant, who was a U.S. citizen domiciled in Venezuela, was stateless because he had no domicile in any state). While Yousef's circumstances of being stripped of his citizenship are unique, it is certainly not unprecedented before any federal court.

In *Blair Holdings*, the court dismissed the action against the stateless defendant, who was stripped of his Russian citizenship for fleeing the country and was later denied reinstatement of his Portuguese citizenship. *Blair Holdings Corp. v. Rubinstein*, 133 F.Supp. 496, 498-99 (S.D.N.Y. 1955); *see Shoemaker v. Malaxa*, 241 F.2d 129 (2d Cir. 1957)(per curiam)(affirming dismissal of defendant who was stateless after his Romanian citizenship was revoked). The court held, "the result is not to deny justice to the plaintiff; it may sue in the state courts. The denial of jurisdiction goes no further than to prevent access to a tribunal of limited powers whose jurisdiction, for reasons good or bad, has not been thought appropriate to such controversies." *Blair Holdings*, 133 F.Supp. at 501.

In *Blanco*, the plaintiffs, who were former Cuban nationals turned exiled Florida residents, sued an insurance company to validate life insurance policies that were purchased by them. *Blanco v. Pan-American Life Ins. Co.*, 221 F.Supp. 219, 228 (S.D.Fla. 1963), *aff'd in part, rev'd in part*, 362 F.2d 167, 169 (5th Cir. 1966). While the plaintiffs were no longer recognized as citizens by the Cuban government, the court determined that the plaintiffs became "civil citizens of Florida" by establishing a domicile there and in turn possessing municipal rights and duties.[3] *Id.* James River principally relies on the *Blanco* decision to support its assertion that Yousef established a domicile in the United States regardless that he has yet to be granted asylum. Rec. Doc. 12 at 3.

On the contrary, in *Kantor*, the lower court dismissed the plaintiff's tort action for want of subject matter jurisdiction because he was a stateless alien whose Soviet citizenship was revoked. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). The plaintiff appealed the dismissal and cited *Blanco*, alleging that he has become a citizen and domiciliary of the state of New York since he left the Soviet Union in 1977. *Id.* The Ninth Circuit was not persuaded that the *Blanco* court expressly held that a stateless party could assume citizenship of the state

---

[3] Although the Fifth Circuit affirmed the district court's decision in part, it did not discuss the lower court's holding about the plaintiffs' Florida domicile.

7

where he resides for diversity purposes. *Id.* at 1091. The court reasoned,

> The central issue in *Blanco* was not jurisdiction, but application of the Act of State doctrine and whether the plaintiffs' status as Cuban nationals subjected them in personam to the sovereignty of the State of Cuba. The district court merely stated that the case was brought under diversity of citizenship jurisdiction without discussing or deciding whether diversity existed pursuant to section 1332(a)(1) (state citizenship diversity), or section 1332(a)(2) (alien jurisdiction). . . .In this case it is clear that appellant is "stateless." Federal courts are without authority to hear suits having as their jurisdictional basis the alienage of a person who has no nationality. In any event, without an explicit holding that plaintiffs were citizens of Florida for diversity purposes we cannot say that *Blanco* supports appellant's contention.

*Id.* at 1091-92 (internal citations omitted). In so holding, the Ninth Circuit affirmed the lower court's dismissal, finding that state court was the appropriate forum for the complaint. *Id.* at 1092.

Like the plaintiff in *Kantor*, Yousef sought to establish a new home in the United States after the Jordanian government rescinded his citizenship. Rec. Doc. 7-1 at 3-4. Having resided in the United States since 2015, Yousef has conducted himself no differently than any U.S. citizen by paying rent, paying taxes, enrolling his children in school, and seeking employment in his desired industry among other things. *Id.* at 3. As such, James River suggests that Yousef should be considered a Louisiana citizen and domiciliary because he became a "civil citizen" by availing himself

8

to the state's rights and liberties. Rec. Doc. 12 at 4. However, it is undisputed that Yousef is not presently a United States citizen in view of his pending immigration case.

We find that the present case is more analogous in both fact and law to *Kantor* than *Blanco*. We are likewise unpersuaded that the Fifth Circuit expressly held that state citizenship can be imputed to an otherwise stateless party through his exercise of civil rights and obligations alone. The *Kantor* decision is more aligned with the statutory principle that federal jurisdiction may only extend over U.S. citizens or foreign nationals. Because Yousef is a stateless individual, complete diversity does not exist to warrant subject matter jurisdiction over his claims.

New Orleans, Louisiana this 20th of May, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE